UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                  MEMORANDUM AND ORDER

           Plaintiff,                       CR 00-522

    -against-                                 (Wexler, J.)

JOSEPH TANGORRA, JOSEPH
DIBENEDETTO, JOSEPH FAMA,
ANDREW STECKLER. ANTHONY
DELUCA, DIFAMA CONCRETE, INC.,
JOEL GOLDMAN, ERNESTO BERTUZZI,
T.H.I. GENERAL CONTRACTING, INC.

           Defendants.
------------------------------------------------------X

APPEARANCES:

    BENTON J. CAMPBELL, UNITED STATES ATTORNEY
    EASTERN DISTRICT OF NEW YORK
    610 Federal Plaza
    Central Islip, New York 11722-4454

    DAVID McCRAW, ESQ.
    ASSISTANT GENERAL COUNSEL
    The New York Times Company
    620 8th Avenue
    New York, New York 10018

WEXLER, J.

       Presently before the court is this now-concluded criminal matter is a request filed by the New York Times Company (The "Times") to make public certain documents presently in the court's chambers file regarding the sentencing of Defendants Joseph Fama And Joseph DiBenedetto. While the Times' initial request sought disclosure of the court's entire sentencing

1

file, it was made clear at oral argument that the Times seeks neither the report of the Probation Department nor letters of a personal nature submitted on behalf of either Defendant.[1] Instead, the Times seeks to have added to the public docket all materials submitted to the court that touch upon the businesses of Defendants Fama and DiBenedetto. For the reasons set forth below, the request is granted.

## DISCUSSION

### I. The Right of Access

The court recognizes that there is both a common law and First Amendment right of public access to judicial documents. Lugosch v. Pyramid Company of Onandaga, 435 F.3d 110, 119 (2d Cir. 2006); United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995); United States v. Sattar, 471 F. Supp.2d 380, 384 (S.D.N.Y. 2006). These rights apply in both civil and criminal cases, and stem from the right of the public to hold accountable, and have confidence in, the judiciary. See generally Nixon v. Warner Comm., Inc. 435 U.S. 589, 597 (1978) (common law right of access); Lugosch v. Pyramid Company of Onandaga, 435 F.3d 110, 119, 120 n.4, 124 (2d Cir. 2006) (common law and First Amendment rights of access); United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995) (common law right of access) United States v. Suarez, 880 F.2d 626, 630 (2d Cir. 1989)(First Amendment right of access).

Under the common law, the right of access applies to all "judicial documents." Lugosch, 435 F.3d at 119. Documents that are "relevant to the performance of the judicial function and useful in the judicial process," are judicial documents subject to the presumption of access. Id.

---

[1] Notice of the Times' request and the date of oral argument was given to all counsel of record. On the date of the argument, counsel neither appeared nor submitted any written material with respect to the request.

2

The weight of the presumption of access is determined by the role the document plays in the exercise of judicial power, and the value of that information to the public monitoring of the federal courts. Amodeo, 71 F.3d at 1049. Documents that play no role in the performance of the court's duties, such as discovery materials exchanged by the parties, have little weight and do not fall within the right of access. Amodeo, 71 F.3d at 1050. On the other hand, documents submitted to a court in connection with a motion are within the presumption of access. Lugosch, 435 F.3d at 123. In connection with the determination of the weight of the right of access, the reason documents are sought is not determinative. Lugosch, 435 F.3d at 123; Amodeo, 71 F.3d at 1050 (motive of the press in seeking documents is generally "irrelevant"). Nor is the weight contingent upon whether or not a court actually considered the document in reaching its determination. Lugosch, 435 F.3d at 123. The issue is limited to the role the document plays in the exercise of a judicial function. Amodeo, 71 F.3d at 1050.

Once the weight of a document is determined, the court balances that weight against any competing interest. The right of access is not to be used to secure confidential business information that might harm a litigant's competitive standing. Nixon, 435 U.S. at 589. The danger of impeding law enforcement and privacy interests may also weigh against public disclosure of a document. Lugosch, at 120. If the release of a document is likely, in the future, to result in non-cooperation by citizens, that effect must be weighed against the common law presumption of access. Amodeo, 71 F.3d at 1050. Similarly, the court must consider the privacy interests of individuals as a factor weighing against disclosure. Amodeo, 71 F.3d at 1050-512 "Courts have long declined to allow public access simple to 'cater to a morbid craving for that which is sensational and impure.'" Id. at 1051, quoting In re Caswell, 29 A. 259, 259 (1893); see

3

also Nixon, 435 U.S. at 598 (common law right of access should not be used to "gratify private spite or promote public scandal").

There is also a qualified right of access recognized under the First Amendment. Documents are subject to the First Amendment right of access if the class of documents sought have historically been open to the public, and if access to the documents plays a significant role "in the functioning of the particular process in question." This is the so-called "experience and logic" test of determining whether the First Amendment right applies. Lugosch, 435 F.3d at 120. Alternatively, a document may be subject to the First Amendment right of access if the documents are "derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings." Lugosch, 435 F.3d at 120, quoting, Hartford Courant Co. v. Pellegrino, 380 F.2d 83, 93 (2d Cir. 2004). Once it is determined that a document is within the qualified First Amendment right of access, the court may seal the document only if "specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Lugosch, 435 F.3d at 120, quoting, In re New York Times, 828 F.2d. 110, 116 (2d Cir. 1987). "Broad and general findings" offered in support of sealing are not sufficient. Id.

II. Disposition

The letters sought by the Times were submitted by the Defendants as part of the sentencing process. As such, they are judicial documents subject to the common law right of access. Accord Sattar, 471 F. Supp.2d at 385 (sentencing documents within common law right of access). As documents submitted by the Defendants to aid the court in the judicial function of sentencing, they are entitled great weight. This is true even though the court did not rely on the

4

documents in reaching its sentencing decision. Lugosch, 435 F.3d at 123; Sattar 471 F. Supp.2d at 385.

As noted, the Times does not seek documents prepared by the Department of Probation. While the issue need not be determined here, it appears that under the principals announced in United States v. Charmer, 711 F.2d 1164, 1171 (2d Cir. 1983), such documents would not be subject to disclosure. Accord United States v. Gotti, 322 F. Supp.2d 230, 248 (E.D.N.Y. 2004)(noting the Charmer court's reference to pre-sentence reports as "confidential reports to the trial judge for use in his effort to arrive at a fair sentence"). Nor does the Times seek documents of a strictly personal nature, such as letters submitted by close family members attesting to the good character and nature of Defendants.

Instead, it is only the documents pertaining to the business affairs of the Defendants that are sought. In view of this limited request, the court finds no countervailing reason to the presumption of access. The request that such documents be made part of the public docket is, therefore, granted. The court details below the review of its file, and the documents that will be made a part of the docket. In light of the fact that the court has found access under the common law, the court need not reach the First Amendment issue.

A.   Joseph Benedetto

The court's review of its sentencing file reveals that the only documents contained in the file of Joseph Benedetto are letters written by Mr. Benedetto's wife and children. In view of the personal nature of these letters, and the limited nature of the request before the court, these letters will not be made part of the court file. The court's review revealed no document of a business nature in the file of Joseph Benedetto.

B.  Joseph Fama

Joseph Fama's sentencing file contains a submission by his attorney (the "Attorney Letter"). The Attorney Letter consists of a twenty-six page cover letter to which numerous exhibits are annexed. In light of the fact that the Attorney Letter contains references to the pre-sentence report, and paraphrases personal letters that are not sought to be disclosed, the court has not made the entire letter public. The court will, however, make a redacted version of the Attorney Letter a part of the docket. This redacted portion gives context to the documents made public and contains counsel's legal argument. The court discusses below its review of the letters and documents annexed as exhibits to the Attorney Letter.

The vast majority of the exhibits annexed to the Attorney Letter fall into two categories: (1) letters from family members, and (2) letters from laborers who worked for Mr. Fama. Family letters include those from Mr. Fama's parents, wife, children, aunts, uncles, nieces, nephews, cousins, brothers-in-law and sisters-in law. These letters discuss Mr. Fama's good character and devotion to his family. The file includes eighteen letters from individuals who worked for Mr. Fama. These letters refer not to business matters, but to Mr. Fama's qualities as a good-natured and caring supervisor. Also annexed to the Attorney Letter are letters from family friends as well as Mr. Fama's dentist, bishop and accountant. Like the other letters, these are of a personal nature, and do not touch upon a business relationship. The personal nature of these letters make them unresponsive to the request of the Times and they will therefore not be made a part of the public docket.

The documents that remain are those that the court will order to be made a part of the docket. Those documents are: (1) a list of job sites and concrete construction projects of DiFama

Concrete, Inc. and DFC Structures, Inc. for the six year period beginning 1999 and ending 2004 (annexed as Exhibit A to the Attorney Letter); (2) a letter from DiFama Concrete, Inc. referring to the company's construction projects (annexed as Exhibit B to the Attorney Letter; (3) a letter from Gary H. Felsher, Mr. Fama's business partner and the owner of DiFama Concrete Inc. (annexed as Exhibit C to the Attorney Letter); (4) a letter from Barker Steel Company referring to the business dealing between that company and DiFama Concrete, and (5) a letter dated June 20, 2005, from Fama's attorney to the court requesting an extension of Mr. Fama's surrender date due to the needs of DiFama Concrete, which request was denied.

Finally, the court notes that it also reviewed its file of DiFama Concrete, Inc., a defendant against which all charges were dismissed. The court's file contained no documents responsive to the request of the Times.

## CONCLUSION

The request of the New York Times for access to business-related documents, submitted by Defendants Fama and DiBenedetto in connection with sentencing, is granted. The court has culled the responsive documents from its file and forwarded them to the Clerk of the Court for filing in the public docket. Counsel for the New York Times is directed to serve a copy of this order on all attorneys of record in this matter.

SO ORDERED.

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
March 26, 2008